# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY BROWN , <br><br> Plaintiff, <br><br> v. <br><br> TRANSUNION RENTAL SCREENING SOLUTIONS, INC., <br><br> Defendant. | Case No.: 4:24-cv-00010 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Anthony Brown ("Plaintiff" or "Mr. Brown") by and through his counsel brings the following Complaint against TransUnion Rental Screening Solutions, Inc., ("Defendant" or "Trans Union") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report that Defendant published to Plaintiff's potential landlord, which falsely portrayed Plaintiff as a convicted sex offender, convicted felon of violent crimes, and convicted misdemeanant.

## INTRODUCTION

1.  This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.  Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions

1

regarding prospective borrowers and tenants.

3. Defendant assembled and published an inaccurate tenant screening report to Plaintiff's prospective landlord, which included a Georgia sex offender registration, a conviction for rape, and convictions for other felonies and misdemeanors.

4. However, **the records reported by Defendant *do not* belong to Plaintiff**, rather they belong to multiple other unrelated individuals.

5. Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the tenant screening report from Defendant, in which Defendant published = fifteen (15) felony and misdemeanor criminal records which included a sex offender registration, a rape conviction, robbery, and grand larceny.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records pertaining to the criminal records prior to publishing the information to Plaintiff's prospective landlord.

7. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

8. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

9. Defendant's inaccurate report cost Plaintiff the ability to rent the single-family house that was suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

2

10. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

12. Anthony Brown ("Plaintiff" or "Mr. Brown") is a natural person residing in New Bern, North Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13. Defendant TransUnion Rental Screening Solutions, Inc., ("Defendant" or "Trans Union") ("Defendant" or "Trans Union") is an Illinois corporation doing business throughout the United States, including the State of North Carolina and in this District, and has a principal place of business located at 555 West Adams Street Chicago, IL 60661. Trans Union can be served through its registered agent Illinois Corporation Service Company, at 801 Adlai Stevenson Drive, Springfield, IL 62703.

14. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

15. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f)

because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

18. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

19. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

20. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

21. Consumer reports that contain factually incorrect information which does not


belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

22. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

23. The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

24. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

25. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

26. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

27. Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

28. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

29. Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

30. Tenant Screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

31. Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

32. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

33. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

34. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

35. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting information belonging to another consumer.

36. As a provider of tenant screening reports, Defendant should be aware of the FCRA

requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies to Rent a Home with M & B Properties

37. In or about September of 2023, Plaintiff began searching for a new home in New Bern, North Carolina after he got married. Specifically, Plaintiff was searching for a home that was in a safe neighborhood, clean, and within his budget.

38. After some research, Plaintiff and his new bride settled on the single-family home at 612 Franklin Avenue, New Bern, North Carolina.

39. On September 20, 2023, Plaintiff submitted a housing application to M & B Properties to rent the home.

### Defendant Published an Inaccurate Tenant Screening Report to M & B Properties

40. M & B Properties, contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent a home.

41. Shortly after the submission of Plaintiff's housing application, Defendant sold a tenant screening report about Plaintiff to M & B Properties, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

42. The report, identified as tenant screening report by Defendant, is a consumer report regulated by the FCRA.

43. Within that tenant screening report, Defendant published inaccurate information about Plaintiff.

44. Specifically, the tenant screening report included the following criminal records

information:



# NY Criminal Offense

| | |
|---|---|
| first name | ANTHONY |
| last name | BROWN |
| race | n/a |
| gender | U |
| height | n/a |
| weight | n/a |
| hair | n/a |
| eye | n/a |

court summary
n/a

court description
n/a

  court action

  activity type
  CRIMINAL/TRAFFIC

  court record id
  CR-009224-23QN

  charge description
  OP MV WHILE INTOXICATED 1

  charge degree
  UNCLASSIFIED MISDEMEANOR

  charge description
  OPER MV .08 OF 1% ALCOHOL-1ST

  charge degree
  FELONY E

  charge description

# NY Criminal Offense

| | |
|---|---|
| first name | ANTHONY |
| last name | BROWN |
| race | n/a |
| gender | U |
| height | n/a |
| weight | n/a |
| hair | n/a |
| eye | n/a |

**court summary**
n/a

**court description**
n/a

**court action**

| | |
|---|---|
| activity type | CRIMINAL/TRAFFIC |
| court record id | IND-72525-23 |
| charge description | CPSP 4TH: POSS CREDIT CARD |
| charge degree | FELONY E |
| charge description | PETIT LARCENY |
| charge degree | |

charge degree
FELONY E
charge description
HARASSMENT 2ND- PHY CONTACT
charge degree
VIOLATION
charge description
MENACING 3RD
charge degree
MISDEMEANOR B
charge description
ROBBERY-1ST:USE DANGER INSTRMT
charge degree
FELONY B
charge description
GR LAR 4TH:PROPERTY FRM PERSON
charge degree
FELONY E
charge description
CRIM POSS WEAP-4TH:INT TO USE
charge degree
MISDEMEANOR A
charge description
MENACING 2ND - WEAPON
charge degree
MISDEMEANOR A
charge description
ROBBERY-3RD
charge degree
FELONY D



45. In summary, Defendant's tenant screening report to M&B properties listed fifteen (15) highly stigmatizing criminal felonies and misdemeanors as belonging to Plaintiff.

| Case Number | Description | Charge Degree |
|---|---|---|
| Georgia | Sex Offender Registry | Not listed |
| | Rape | Not listed |
| New York - CR-009224-23QN | Operating motor vehicle while intoxicated | Misdemeanor |
| | Operating motor vehicle .08 of 1% alcohol | Felony |
| New York - CR-027324-22NY | Grand Larceny | Felony |
| New York - IND-72525-23 | Criminal Possession Stolen Property | Felony |
| | Petit Larceny | Felony |
| | Harassment-physical contact | Not listed |
| | Menacing | Misdemeanor |
| | Robbery-use of dangerous instrument | Felony |
| | Grand Larceny-property from person | Felony |

|  | Criminal Possession of Weapon-intent to use | Misdemeanor |
|---|---|---|
|  | Menacing | Misdemeanor |
|  | Robbery | Felony |
| New York - SCI-71407-23 | Grand Larceny | Felony |

46. However, **NONE** of the extensive criminal records published by Defendant about Plaintiff to M & B Properties *actually* belonged to Plaintiff.

47. Defendant published inaccurate information about Plaintiff. The above-referenced information should not have been included in any tenant screening report about Plaintiff.

48. Specifically, it is indisputable that prior to furnishing the report about Plaintiff to M&B Properties, Defendant failed to consult widely available public court records in Georgia and New York, which indicate that the aforementioned records do not belong to Plaintiff.

49. A cursory review of the widely available underlying public court records confirms that the records belong to two to three unrelated convicted felons/misdemeanants named Anthony **Bernard Chapman** from Georgia **and two unrelated Anthony Brown's** from New York. Respectively, Sex Offender Chapman and Convicted Felons Brown. Defendant's unreasonable or non-existent procedures allowed Defendant to publish a report about Plaintiff wherein Defendant mixed the criminal history of at least two unrelated convicted felons named Anthony Bernard Chapman and one or more Anthony Browns into that same report.

50. Had Defendant actually consulted or obtained the widely available underlying public court records, it would have seen the obvious discrepancies between these two to three unrelated convicted felons and Plaintiff.

51. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as the two or three convicted felons include the following:

    (a) Sex Offender Chapman

- Plaintiff's legal name is Anthony Brown (no middle name) but the name of the individual subject to the Georgia Sex Offender Registry and Rape charge in the underlying public court records is Anthony Bernard Chapman;

- Plaintiff's date of birth, which was provided to Defendant prior to publishing the tenant screening report, is wholly distinctive than the underlying public court records which indicate that Sex Offender Chapman's date of birth is July 1965;

- Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the tenant screening report is entirely different than that of Sex Offender Chapman as confirmed by the underlying public court records.

(b) Convicted Felons Brown (Case Nos. CR-009224-23QN, IND-72525-23, SCI-71407-23, CR-02734-22NY.)

- Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the tenant screening report is entirely different than that of Convicted Felon Brown as confirmed by the underlying public court records.

- The thirteen (13) New York public records only list a year of birth (1965) which indicates Defendant employs an unreasonable matching procedure, especially given Plaintiff's common name.

52. The sole reason the inaccurate criminal records were reported as belonging to

Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

53. "Brown" is the fourth most common last name in the United States, according to the 2010 US Census.

54. Had Defendant implemented reasonable "common name" matching procedures, it would have discovered the criminal records belonged to unrelated individuals.

55. Had Defendant followed reasonable procedures, it would have discovered that the fifteen (15) inaccurate, stigmatizing criminal convictions and sex offender record belong to persons with different full names, different dates of birth, and/or different Social Security Numbers than Plaintiff.

56. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### M & B Properties Denies Plaintiff's Housing Application

57. Shortly after September 20, 2023, Plaintiff was verbally told by M & B Properties that his housing application was denied for the home for which he applied as a direct result of the criminal records reported by Defendant.

58. Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing and realizing that the criminal records of other individuals were published in the tenant screening report Defendant sold about Plaintiff to M & B Properties.

59. Plaintiff was very panicked, confused, and concerned about the impact of the records of unrelated individuals being reported on the tenant screening report – specifically, the

impact of the same on his future.

60. Specifically, Defendant matched Plaintiff and multiple other individuals such as a sex offender, and at least one other convicted felon and misdemeanant, and published the criminal records onto the tenant screening report about Plaintiff and sold that report to Plaintiff's prospective landlord. This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's tenant screening report to M & B Properties, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Tenant Screening Report**

61. On September 22, 2023, desperate to secure housing with M & B Properties and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information via email with Defendant.

62. Plaintiff identified himself and provided information to Defendant to support his dispute.

63. Plaintiff specifically disputed the numerous criminal records of other individuals that were published in his consumer report.

64. Plaintiff specifically stated that the stigmatizing criminal records do not belong to Plaintiff.

65. Plaintiff specifically asked Defendant to investigate and delete the inaccurate criminal records from any tenant screening report about Plaintiff.

66. On October 10, 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and stated that "Case number NA with offense Rape was deleted from your consumer report."

67. The letter from Defendant further stated that the other disputed criminal records were "deletions already made" from Plaintiff's report at the time of Plaintiff's dispute.

68. Defendant also communicated to Plaintiff that it had issued a corrected tenant screening report to M & B Properties.

69. The corrected tenant screening report attached to Defendant's October 10, 2023 letter (below) stated that no criminal records about Plaintiff were returned:



70. Plaintiff continued to follow up with M & B Properties in hopes that the application for housing would be approved, but the affordable home for which he applied had already been rented because of the delay in the corrected report.

71. The alternative property M & B Properties offered Plaintiff and his wife was a higher rent that they could not afford.

72. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, M & B Properties rented the property which they wanted and could afford to another party.

73. Plaintiff and his wife were forced to look for another house to rent.

74. Defendant's false report cost Plaintiff a housing opportunity that met his needs, including those attendant to affordability, safety, and proximity to work, friends, and family.

75. Plaintiff was looking forward to living at M & B Properties because it was in a safe neighborhood, was well maintained, and was within his budget.

76. Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek housing, Plaintiff lost the ability to rent the desirable home with M & B Properties.

77. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

78. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

# CLAIMS FOR RELIEF

## COUNT I
## 15 U.S.C. § 1681e(b)
## Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

79. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

80. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

81. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

82. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

83. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

84. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

85. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

86. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable

attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 17th day of January 2024.

*/s/ Dawn McCraw*
Dawn McCraw, NC # 54714
**CONSUMER ATTORNEYS**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (718) 715-1750
E: dmccraw@consumerattorneys.com

*Attorney for Plaintiff*
*Anthony Brown*